**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| PATAPSCO MART, LLC, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 22-cv-00822-LKG |
| ) | |
| v. ) | Dated:  November 16, 2023 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**<u>MEMORANDUM OPINION</u>**

**I.     INTRODUCTION**

In this civil action, Plaintiffs, Patapsco Mart, LLC ("Patapsco Mart") and Jamar Abdul Nasir, challenge the United States Department of Agriculture's ("USDA") Food and Nutrition Service ("FNS") decision to permanently disqualify Patapsco Mart from participation in the Supplemental Nutrition Assistance Program ("SNAP"), pursuant to the Food and Nutrition Act of 2008, 7 U.S.C. §§ 2011 *et seq*. *See generally*, ECF No. 1.  The Government has moved to dismiss the complaint, or, alternatively, for summary judgment, pursuant to Fed. R. Civ. P. 12(b)(6) and 56.  ECF Nos. 12 and 12-1.  The motion is fully briefed.  ECF Nos. 20, 20-1 and 25. No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2021).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** the Government's motion to dismiss or, alternatively, for summary judgment and (2) **DISMISSES** the complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

In this civil action, Plaintiffs, Patapsco Mart and Jamar Abdul Nasir, challenge FNS's decision to permanently disqualify Patapsco Mart from participation in the SNAP Program, pursuant to the Food and Nutrition Act of 2008, 7 U.S.C. §§ 2011, *et seq*.  *See generally*, ECF No. 1.  As relief, Plaintiffs request that the Court conduct a *de novo* review of FNS's disqualification decision and reverse FNS's permanent disqualification of Patapsco Mart from SNAP.  *Id*. at Prayer for Relief.

<u>The Parties</u>

Plaintiff Patapsco Mart was a convenience store located at 817 E. Patapsco Avenue, Brooklyn, MD 21225.[2]  A.R. 1.   The store was organized as a Maryland limited liability company.  A.R. 4.

Plaintiff Jamir Abdul Nasir is the sole member, officer and owner of Patapsco Mart.  A.R. 5.

The United States Department of Agriculture's Food and Nutrition Service ("FNS") administers SNAP.  ECF No. 12-1 at 3.

<u>SNAP And Its Implementing Regulations</u>

As background, the Supplemental Nutrition Assistance Program is operated by USDA.  *See* 7 U.S.C. §§ 2011-2036.   The mission of the program is "to promote the general welfare, to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households."   7 U.S.C. § 2011.  In furtherance of this mission, SNAP aims to increase the food purchasing power of eligible households by supplementing the funds families have to spend on food by providing SNAP benefits, which may be used for purchasing food items at authorized retail food stores.   *See id.* § 2013.  SNAP benefits can only be

---

[1] The facts recited in this memorandum opinion are taken from the complaint; the Defendant's motion to dismiss or, in the alternative, for summary judgment; the memorandum in support thereof; and the Administrative Record. ECF Nos. 1, 12 and 12-1; A.R.

[2] Patapsco Mart was closed and liquidated on September 1, 2022.  ECF No. 20-6.

redeemed for purchases of eligible food.  *See id.*; *see also* 7 C.F.R. § 271.2.

The program is administered by FNS.  *See* 7 C.F.R. § 271.3.  Through FNS, a household's SNAP benefits are delivered through electronic benefit transfer ("EBT") cards that operate similarly to a debit card issued by a bank.  *See* 7 U.S.C. § 2016(j); ECF No. 12-1 at 3. The EBT card is used at authorized retail food stores to purchase eligible food items.  7 U.S.C. § 2013(a).

To make a purchase, the retailer swipes the EBT card through an EBT terminal, the recipient enters a personal identification number code on a keypad, and the amount of the purchase is deducted from the beneficiary's EBT card balance.  ECF No. 12-1 at 3.  The EBT terminal generates a receipt for each transaction and the balance remaining in the recipient's account for the month is displayed on the receipt.  *Id.* at 3-4.  The amount of the recipient's purchase is then electronically credited within two banking days to the retail food store owner's bank account.  *See* 7 U.S.C. § 2013(a) (providing that only retailers approved by USDA may engage in SNAP benefit transactions); 7 C.F.R. § 278.1 (describing the process by which a retailer becomes an approved SNAP participant).   FNS is able to electronically monitor retail food stores' EBT transactions.  *See* 7 C.F.R. § 278.6.

Pursuant to SNAP regulations, retail food store owners may not accept EBT benefits as payment for ineligible items, such as non-food items, alcoholic beverages, and some prepared hot food items.  *Id.* § 271.2 (defining the "[e]ligible foods" subject to SNAP benefits).  Food store owners are also prohibited from exchanging EBT benefits for cash.  *Id.*

FNS is authorized to monitor stores participating in SNAP, conduct periodic reviews of the stores' EBT transactions, and initiate an investigation of a store, when it believes an investigation is warranted by suspicious data.  7 C.F.R. § 278.6.  FNS is also authorized to disqualify any store from future participation in SNAP and/or assess a civil monetary penalty ("CMP") against the store if the store fails to comply with any provision of the Food and Nutrition Act, or a regulation promulgated thereunder.[3]  7 U.S.C. § 2021(a); 7 C.F.R. §

---

[3] SNAP program disqualification must be based on "a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, evidence obtained through a transaction report under an electronic benefit transfer system, or the disqualification of a firm from the Special Supplemental Nutrition Program for Women, Infants and Children (WIC)."  7 C.F.R. § 278.6(a).

278.6.

The trafficking of SNAP benefits is defined in 7 C.F.R. § 271.2, and this conduct generally involves the exchange of SNAP benefits for cash, or other consideration other than eligible food items. The penalty for trafficking is permanent disqualification from SNAP. 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(e)(1)(i). In addition, FNS may impose a civil monetary penalty ("CMP"), in lieu of permanent disqualification, if the store submits substantial evidence, within 10 days of receiving a charge letter from the agency, showing that the store had established and implemented an effective compliance policy and program to prevent SNAP violations.[4]   7 C.F.R. § 278.6(i).

---

[4] The SNAP regulations establish four criteria which the store must satisfy, through "substantial evidence," for FNS to have the discretion to impose a CMP in lieu of permanent disqualification:

*Criterion 1.* The firm shall have developed an effective compliance policy as specified in § 278.6(i)(1); and

*Criterion 2.* The firm shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred prior to the occurrence of the violations cited in the charge letter sent to the firm; and

*Criterion 3.* The firm had developed and instituted an effective personnel training program as specified in § 278.6(i)(2); and

*Criterion 4.* Firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations; or it was only the first occasion in which a member of firm management was aware of, approved, benefited from, or was involved in the conduct of any trafficking violations by the firm. Upon the second occasion of trafficking involvement by any member of firm management uncovered during a subsequent investigation, a firm shall not be eligible for a civil money penalty in lieu of permanent disqualification. Notwithstanding the above provision, if trafficking violations consisted of the sale of firearms, ammunition, explosives or controlled substances, as defined in 21 U.S.C. § 802, and such trafficking was conducted by the ownership or management of the firm, the firm shall not be eligible for civil money penalty in lieu of permanent disqualification. For purposes of this section, a person is considered to be part of firm management if that individual has substantial supervisory responsibilities with regard to directing the activities and work assignments of store employees. Such supervisory responsibilities shall include the authority to hire employees for the store or to terminate the employment of individuals working for the store.

7 C.F.R. § 278.6(i).

<u>The FNS's Investigation Of Patapsco Mart</u>

In 2021, FNS found two suspicious transaction patterns involving Patapsco Mart that the agency believed to be indicative of the illegal trafficking of SNAP benefits.  ECF No. 12-1 at 1, 7.  Following an investigation of these transactions, the agency charged Patapsco Mart with trafficking, in violation of the Food and Nutrition Act, and permanently disqualified the store from participating in SNAP.  *Id.* at 1-2.

The FNS Retailer Operations Division ("ROD") began its investigation into Patapsco Mart, because the FNS ALERT System indicated that the store's EBT data contained patterns that were consistent with possible trafficking.  A.R. 189.  To accomplish the investigation, ROD reviewed and analyzed EBT data for the months June 2021 through September 2021 (the "Review Period").  *Id*.  A contractor for FNS also conducted a store visit on June 17, 2021 (the "Store Visit") and compiled a report on Patapsco Mart (the "Store Visit Report").  A.R. 97-120.  During the Store Visit, a Patapsco Mart cashier consented to the Store Visit and assisted in providing information for the Store Visit Report.  A.R. 97, 98 and 102.

The Store Visit Report indicates that Patapsco Mart had one check-out counter area, with two cash registers for grocery purchases, one specialty register, and one EBT point of sale device.  A.R. 98.  The report also indicates that Patapsco Mart did not have storage coolers or freezers and did not store food offsite.  *Id.*  In addition, this reports shows that Patapsco Mart did not sell primarily one food type, take telephone orders, offer delivery, or sell meat bundlers, seafood specials, or fruit or vegetable boxes.  *Id.*

The Store Visit Report also contains a breakdown of the types and quantities of foods available for purchase at Patapsco Mart in the four staple food categories and a rendering of the layout and photographs of the store.  A.R. 100-120.  In this regard, the report notes that that Patapsco Mart had empty shelves at the time of the Store Visit.  A.R. 98.

Following the Store Visit, ROD analyzed Patapsco Mart's SNAP EBT data and all the available information about the store.  ECF No. 12-1 at 8.  ROD found suspicious transaction patterns that fell into two categories: (1) multiple transactions in a short period of time by the same household/account, and (2) large purchase transactions from EBT households.  A.R. 197; *see also* A.R. 212-225 (documenting the data ROD collected showing multiple transactions in a short period of time); A.R. 226-250 (documenting the data ROD collected showing large purchase transactions from EBT households).  In this regard, ROD found 107

suspicious sets of transactions totaling $12,415.57 in SNAP benefits completed by 87 different households.  A.R. 197.  ROD also found 1,399 transactions—as large as $374.86 and totaling $76,805.99—that were considered suspiciously large based on the observed characteristics and recorded food stock at the store.  *Id.*; A.R. 250.

In addition, ROD noted that there were 16 other authorized stores located within one mile of Patapsco Mart.  A.R. 198.  And so, ROD compared the transactions at Patapsco Mart to the transactions at two similarly stocked convenience stores located within 3.79 miles of the store.  A.R. 199.  Based upon this comparison, ROD found that Patapsco Mart had significantly higher transaction dollar amounts and dollar volume than the comparison stores.  A.R. 199-200.  ROD also found that Patapsco Mart had significantly higher transaction dollar amounts and dollar volume than other comparison convenient stores in Baltimore City and the state of Maryland during the review period.  A.R. 201-02.

Lastly, ROD reviewed the shopping patterns of selected households that were involved in suspicious transactions during the review period and found that those households were also shopping at larger, better stocked stores at the same time as exhibiting suspicious shopping patterns at Patapsco Mart.  A.R. 202-08.  Following this review, ROD concluded that the evidence warranted issuing a trafficking charge letter to Patapsco Mart.  A.R. 208.

On November 15, 2021, ROD sent a letter to the Plaintiff Mr. Nasir informing him that an analysis of the store records, including a review of the Patapsco Mart's characteristics, food stock, and store pricing gathered from a store visit, established clear and repetitive patterns of unusual, irregular and inexplicable activity for the store's type (the "Charge Letter").  A.R. 209-11.  The Charge Letter informed Mr. Nasir that Patapsco Mart was being charged with trafficking, as defined by 7 C.F.R. § 271.2, and that ROD was also considering permanently disqualifying Patapsco Mart from SNAP.  *Id.*  In addition, the Charge Letter advised that Mr. Nasir had the right to reply to the charges, and to present "any information, explanation, or evidence regarding these charges" within 10 days of the receipt of the Charge Letter and to request a CMP in lieu of permanent disqualification.  A.R. 209-10.

Mr. Nasir received the Charge letter on November 16, 2021.  A.R. 261.  But, he did not respond to the Charge Letter.  A.R. 262.  And so, ROD concluded that, based upon the available evidence, it was more likely than not that Patapsco Mart engaged in SNAP benefits trafficking and that permanent disqualification from SNAP was the appropriate sanction.  *Id.*

On November 30, 2021, FNS issued a determination letter (the "Determination Letter") informing Mr. Nasir of FNS's determination that the violations alleged in the Charge Letter occurred and of the imposition of a permanent disqualification for the trafficking violations. A.R. 263. The Determination Letter also advised Mr. Nasir of his right to appeal the decision to FNS's Administrative Review Branch within 10 days of his receipt of the Determination Letter on December 1, 2021. *Id.*; A.R. 268.

<u>The Final Agency Decision Disqualifying Patapsco Mart From SNAP</u>

On December 3, 2021, Plaintiffs requested an administrative review of FNS's trafficking determination. A.R. 269-75. Plaintiffs also requested that, if the Administrative Review Branch found trafficking did occur, that the store be sanctioned with a CMP in lieu of permanent disqualification. A.R. 328.

On March 7, 2022, the agency issued its Final Agency Decision (the "Final Decision") concluding that permanent disqualification of Patapsco Mary from participation in SNAP was appropriate. A.R. 1308-32. In the Final Decision, FNS outlined the repeat transactions by the same household, which contained 107 sets of transactions, totaling $12,415.57, conducted by 87 different SNAP households. A.R. 1319. While acknowledging that it was not uncommon for households to conduct more than one transaction in a day, FNS, nonetheless, found that it was uncommon for the transactions to be for such large dollar amounts and that the transactions were suspicious, because they display characteristics of use that are inconsistent with Patapsco Mart's stock and facilities. A.R. 1319-20; *see also* A.R. 1319-22 (explaining why Patapsco Mart's purported justifications could not in fact explain the transactions in question and detailing how similar patterns were not found at nearby comparable stores).

The Final Decision also detailed the excessively large purchases at the store, which include 1,399 transactions as large as $374.86 and totaling $76,805.99. A.R. 1322. The agency found that these large transactions were not consistent with Patapsco Mart's observed characteristics and food inventory. *Id.* Importantly, the agency found that the average transaction listed in ROD's analysis was 5.5 times larger than the city-wide average for convenience stores located in Baltimore City during the Review Period. A.R. 1324. The agency also found that the transaction patterns were inconsistent when compared to the comparison convenience stores. A.R. 1325.

FNS concluded in the Final Decision that Patapsco Mart was not eligible for the CMP in lieu of disqualification, because the store neither timely requested consideration for the CMP, nor submitted any evidence to indicate that it was eligible for the CMP.  A.R. 1331-32. And so, the Administrative Review Officer affirmed the agency's decision to permanently disqualify Patapsco Mart from participation in SNAP.  A.R. 1332.

The Plaintiffs' Allegations

Plaintiffs allege in the complaint that FNS improperly disqualified Patapsco Mart from participation in SNAP, because the store did not engage in the trafficking of SNAP benefits and the transactions that FSN relied upon to permanently disqualify the store from the program were "bona fide purchases of food items, in exchange for SNAP benefits as the system was intended."  ECF No. 1 at ¶¶ 53, 56.  In this regard, Plaintiffs allege that the transaction categories cited by FNS "are the result of [their] regular business practices, inventory, location and the SNAP participants' shopping preferences."  *Id.* at ¶ 60.

Plaintiffs also allege that FNS "failed to adequately account for the shopping habits of the store's SNAP clientele" and "failed to adequately identify appropriate SNAP retailers for statistical and transactional comparison purposes."  *Id.* at ¶¶ 61-62.  And so, Plaintiffs contend that these alleged failures "materially impacted the Government's analysis, and led to the errant conclusion that trafficking was occurring."  *Id.* at ¶ 63.

Lastly, Plaintiffs contend that FNS's decisions to disqualify Patapsco Mart, and to deny the issuance of a civil money penalty in this matter, are "invalid and inaccurate."  *Id.* at ¶ 65. And so, Plaintiffs request that the Court conduct a *de novo* review of FNS's disqualification decision and reverse FNS's permanent disqualification of Patapsco Mart from SNAP.  *Id*. at Prayer for Relief.

**B.      Procedural History**

On April 6, 2022, Plaintiffs commenced this civil action.  A.R. 1332; ECF No. 1.  On September 26, 2022, the Government filed a motion to dismiss or, in the alternative, for summary judgment, and a memorandum in support thereof, pursuant to Fed. R. Civ. P. 12(b)(6) and 56.  ECF Nos. 12 and 12-1. On September 27, 2022, the Government filed the administrative record.  ECF Nos. 14 to 14-12 and 15.

On November 28, 2022, Plaintiffs filed a response in opposition to the Government's motion.  ECF Nos. 20 and 20-1.  The Government filed a reply brief on January 10, 2023. ECF No. 25.

The Government's motion to dismiss or, in the alternative, for summary judgment having been fully briefed, the Court resolves this pending motion.

## III.   LEGAL STANDARDS

### A.   Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  (citing *Twombly*, 550 U.S. at 556).  When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet*, 591 F.3d at 255.  And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

### B.   Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.

*Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc*., 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).[5]

C.     **Section 2023 And Its Implementing Regulations**

After receiving notice of the final action by FNS, an aggrieved retailer may seek

---

[5] A Rule 12(b)(6) motion may be treated as one for summary judgment, if the Court considers matters outside the pleadings. *See* Fed. R. Civ. P. 12(d). The conversion under Rule 12(d) has two elements. First, there must be an indication to all parties that the Court is treating the motion as one for summary judgment. *See, e.g.*, *Rolf v. Flury*, No. 1:13-cv-03145, 2014 WL 6835384, at *2-3 (D. Md. Dec. 2, 2014). Second, the parties should be afforded a reasonable opportunity for discovery. *Rolf*, 2014 WL 6835384, at *3 (quotation omitted).

judicial review in federal or state court, which court shall determine, *de novo*, the validity of the administrative action.  7 U.S.C. § 2023(a)(13), (15); 7 C.F.R. § 279.7.  This *de novo* review requires that "the district court 'must reach its own factual and legal conclusions based on the preponderance of the evidence and should not limit its consideration to matters previously appraised in the administrative proceedings.'"  *Ibrahim v. United States*, 834 F.2d 52, 53-54 (2d Cir. 1987) (quoting *Modica v. United States,* 518 F.2d 374, 376 (5th Cir. 1975).  And so, within this context, "*de novo* review means that the retailer bears the ultimate burden of proving by a preponderance of the evidence that the alleged violations did not occur."  *AJS Petroleum, Inc. v. United States*, No. 1:11-cv-01085, 2012 WL 683538, at *4 (D. Md. Mar. 1, 2012); *see also, e.g.*, *2341 E. Fayette St., Inc. v. United States*, No. 1:05-cv-00974, 2005 WL 2373696, at *1 (D. Md. Sept. 26, 2005).

De novo review "does not, however, *entitle* plaintiffs to reach a trial on the merits of their cause of action."  *Bon Supermarket & Deli v. United States*, 87 F. Supp. 2d 593, 598 (E.D. Va. 2000) (emphasis in original).  Rather, Congress simply "intended . . . [that] the district court would not be bound by the administrative record."  *Id.*  Given this, the retailer "is not limited to the factual record before the Agency, but may rely on other evidence as well," in attempting to disprove the violations.  *AJS Petroleum, Inc.*, 2012 WL 683538, at *4 ("[T]the plaintiff may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency.") (quoting *Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997)).

The Court's judicial review is conducted in two stages.  First, the retailer bears the burden of establishing, by a preponderance of evidence, that the violations found by the agency did not occur.  *See AJS Petroleum, Inc.*, 2012 WL 683538, at *4; *see also, e.g.*, *2341 E. Fayette St., Inc. v. United States*, No. 1:05-cv-00974, 2005 WL 2373696, at *1 (D. Md. Sept. 26, 2005).  Absent a showing by the plaintiff that meets this burden of persuasion, the reviewing court must uphold the agency's findings as valid.  *See, e.g.*, *Brother Convenience Store, Inc. v. United States Dep't of Agric.*, No. CV GLR-20-1346, 2021 WL 3911594, at *13 (D. Md. Sept. 1, 2021).  Second, if the Court concludes that a violation occurred, it applies the "arbitrary and capricious" standard in determining whether the sanction imposed is valid.[6]  Lastly, the Fourth

---

[6] The Fourth Circuit has held that "the scope of judicial review extends to the period of administrative sanction."  *Cross v. United States*, 512 F.2d 1212, 1215 (4th Cir. 1975).  Reviewing courts apply the

Circuit has held that "summary judgment is a proper means of disposing of a request for review under 7 U.S.C. § 2023(a)(13), where there are presented no genuine issues of material fact." *Bon Supermarket & Deli*, 87 F. Supp. 2d. at 599; *see Idias v. United States*, 359 F.3d 695, 696 (4th Cir. 2004) (affirming district court's award of summary judgment in case involving permanent disqualification for food stamp trafficking); *see also Brother Convenience Store, Inc. v. United States Dep't of Agric.*, No. CV GLR-20-1346, 2021 WL 3911594, at \*13 (D. Md. Sept. 1, 2021) ("Whether the imposition of a penalty by the FNS [is] arbitrary or capricious is a matter of law appropriately determined on a motion for summary judgment.") (quoting *Duchimaza v. United States*, 211 F. Supp. 3d 421, 439 (D. Conn. 2016)).

## IV.    ANALYSIS

The Government has moved to dismiss the complaint, or, alternatively, for summary judgment in its favor, pursuant to Fed. R. Civ. P. 12(b)(6) and 56, upon the grounds that: (1) Plaintiffs fail to state a plausible claim under the Food and Nutrition Act, because they improperly seek to challenge the FNS's reliance upon EBT data during the investigation of Patapsco Mart's participation in SNAP; (2) FNS's determination that Patapsco Mart engaged in the trafficking of SNAP benefits is supported by the administrative record; and (3) the administrative record shows that FNS's decision not to impose a civil penalty in lieu of permanently disqualifying Patapsco Mart from SNAP is mandated by law, and thus, not arbitrary and capricious.  ECF No. 12-1 at 2-3.

Plaintiffs counter that dismissal of this action is not warranted, because they have appropriately pled their claims in this case.  ECF No. 20-1 at 22-23.  In addition, Plaintiffs argue that summary judgment in the Government's favor is also unwarranted, because there are genuine disputes of material facts about whether Plaintiffs engaged in the trafficking of SNAP benefits.  ECF No. 20-1 at 23.  And so, Plaintiffs request that the Court deny the Government's dispositive motion.  *Id.*

---

"arbitrary and capricious" standard to determine whether the sanction imposed is valid.  *See, e.g.*, *Mahmood v. United States*, No. 1:12-cv-00228, 2012 WL 3038638, at \*3 (D. Md. July 24, 2012); *2341 E. Fayette St., Inc.*, 2005 WL 2373696, at \*1.

For the reasons set forth below, a careful reading of the complaint shows that Plaintiffs have pled a plausible claim challenging FNS's Final Decision under the Food and Nutrition Act. But, the administrative record shows that FNS's determination that Patapsco Mart engaged in the trafficking of SNAP benefits is supported by the record evidence. The administrative record also makes clear that FNS's decision to permanently disqualify Patapsco Mart from SNAP, rather than to impose a civil penalty, was reasonable and consistent with the applicable law. And so, the Court: (1) GRANTS-in-PART the Government's motion to dismiss, or, alternatively, for summary judgment and (2) DISMISSES the complaint.

### A. Plaintiffs Have Sufficiently Pled Their Claims

As an initial matter, the Court declines to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiffs have sufficiently pled their claims challenging FNS's permanent disqualification decision in the complaint. Plaintiffs allege in the complaint that the EBT data relied upon by FNS to permanently disqualify Patapsco Mart from SNAP does not support the agency's decision. But, as the Government correctly observes in its dispositive motion, the Fourth Circuit has explained that, FNS's reliance on data in proving trafficking of SNAP benefits is proper:

> Congress expressly authorized the FNS to consider "evidence obtained through a transaction report under an electronic benefit system" in disqualifying food stores for food stamp trafficking. 7 U.S.C. § 2021(a). And the FNS has done exactly that, issuing regulations that permit a food store to be disqualified from the Food Stamp Program on the basis of "inconsistent redemption data" or "evidence obtained through [an EBT] transaction report." 7 C.F.R. § 278.6(a).

*Idias*, 359 F.3d at 698; *see also Kahin v. United States*, 101 F. Supp. 2d 1299, 1303-04 (S.D. Cal. 2000) (rejecting the notion that store personnel must be caught "red-handed" trafficking in food stamps); *Brother Convenience Store, Inc.*, 2021 WL 3911594, at *12 (observing that "it was perfectly acceptable for the Agency to base its decision on evidence from on-site investigations and EBT transaction data—indeed, nothing in the Food and Nutrition Act or its corresponding regulations requires FNS to interview EBT beneficiaries to issue a finding of trafficking"); *Negash v. United States*, No. RDB-17-1954, 2018 WL 722481, at *4 (D. Md. Feb. 5, 2018) (finding the defendant's "attacks on the FNS's use of its electronic alert system

wholly unpersuasive"); *Duchimaza*, 211 F. Supp. 3d at 432-33 (acknowledging that "the Government may permanently disqualify a retailer on the basis of EBT data").

Plaintiffs' claims in this case are not, however, "premised entirely on generalized complaints about the Agency's reliance on EBT data," as the Government suggests. ECF No. 12-1 at 17. While Plaintiffs do disparage FNS's reliance on EBT data, ECF No. 1 at ¶¶ 30-31, the complaint makes clear that Plaintiffs also claim that FNS misinterpreted the data on which it relied, leading the agency to draw erroneous conclusions surrounding the nature of the disqualifying transactions. *Id.* at ¶¶ 32-33. Notably, Plaintiffs contend that FNS's analysis was flawed in four primary areas: (1) the use of transaction comparison data; (2) the categorization of Plaintiffs' inventory and business model; (3) the choice of comparison stores; and (4) the explanations for why SNAP households were shopping frequently and in large dollar volumes at Plaintiffs' store. ECF No. 20-1 at 23. Given this, Plaintiffs state a plausible claim under the Food and Nutrition Act. And so, the Court declines to dismiss this matter for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

### B.    The Administrative Record Supports The Agency's Finding That Plaintiffs Were Trafficking In SNAP Benefits

Turning to the substance of Plaintiffs' claims, Plaintiffs have not met their burden to show, by a preponderance of the evidence, that the violations found by the agency did not occur.

It is well-established that Plaintiffs "[bear] the ultimate burden of proving by a preponderance of the evidence that the alleged violations did not occur." *AJS Petroleum, Inc.*, 2012 WL 683538, at *4; *see also, e.g.*, *2341 E. Fayette St., Inc.*, 2005 WL 2373696, at *1. Absent such a showing, the Court must uphold the agency's findings in this case as valid. *See, e.g.*, *Brother Convenience Store, Inc.*, 2021 WL 3911594, at *13.

If the Court concludes that the violations found by FNS did occur, the Court then applies the "arbitrary and capricious" standard to determine whether the sanction imposed by the agency is valid. *AJS Petroleum, Inc.*, 2012 WL 683538, at *4. In conducting this analysis, the Fourth Circuit has held that "summary judgment is a proper means of disposing of [Plaintiffs'] request for review under 7 U.S.C. § 2023(a)(13), where there are presented no genuine issues of material fact." *Bon Supermarket & Deli*, 87 F. Supp. 2d. at 599; *see Idias*, 359 F.3d at 696 (affirming district court's award of summary judgment in case involving permanent disqualification for food stamp trafficking); *see also Brother Convenience Store,*

*Inc.*, 2021 WL 3911594, at *13 ("Whether the imposition of a penalty by the FNS [is] arbitrary or capricious is a matter of law appropriately determined on a motion for summary judgment.") (quoting *Duchimaza*, 211 F. Supp. 3d at 439).

"[C]ourts regularly grant summary judgment based on EBT transaction data." *Loma Deli Grocery Corp.*, No. 20 CIV. 7236 (JPC), 2021 WL 4135216, at *8 (S.D.N.Y. Sept. 10, 2021) (granting motion for summary judgment and holding that "[p]laintiffs' attack on the 'patterns' identified in the ALERT system does not give rise to a question of material fact"); *see also AJS Petroleum, Inc.*, 2012 WL 683538, at *5 (observing that "FNS does not need to provide evidence that a store was caught 'red-handed' engaging in a food stamp violation in the summary judgment stage") (quoting *Young Choi Inc. v. United States*, 639 F. Supp. 2d 1169, 1178 (D. Haw. 2009)); *Brother Convenience Store, Inc.*, 2021 WL 3911594, at *12 (rejecting plaintiffs' complaint that "USDA 'did not conduct even a basic investigation' because it failed to 'contact[ ] cardholders of the alleged suspicious transactions'"). And so, the Court may grant the Government's motion for summary judgment in this case, if the Court concludes that the violations found by FNS did occur and the agency's decision to permanently disqualify Patapsco Mart from SNAP is valid. *See 2341 E. Fayette St., Inc.*, 2005 WL 2373696, at *1.

As discussed below, summary judgment in favor of the Government is appropriate here, because FNS's finding that that Patapsco Mart engaged in the trafficking of SNAP benefits is well-supported by the administrative record.

1.    Multiple Transactions From The Same Household Evidence Trafficking

First, the record evidence supports FNS's finding that Plaintiffs engaged in SNAP benefits trafficking, based upon evidence showing multiple transactions conducted at Patapsco Mart during a short period of time from the same household. A.R. 212-25. In this regard, the record evidence shows that, following the Store Visit conducted on June 17, 2021, the FNS Retailer Operations Division found suspicious transaction patterns, during the period June through September 2021, involving multiple transactions in a short period of time by the same household/account. A.R. 197; *see also* A.R. 97-120 (the Store Visit Report); A.R. 212-225 (documenting the data ROD collected showing multiple transactions in a short period of time).

Notably, FNS found 107 suspicious sets of transactions, totaling $12,415.57 in SNAP

benefits, that were completed by 87 different households.  A.R. 197.  As the Government explains, such transactions are suspect, because "[m]ultiple transactions conducted by the same household account within a short period of time is a method which violating stores use to avoid single high dollar transactions that cannot be supported by a retailer's inventory and structure." *Id.*

Plaintiffs arguments to show that these transactions are not evidence of SNAP benefits trafficking are also not persuasive for several reasons.

First, Plaintiffs argue that the evidence showing multiple transactions does not indicate trafficking, because the SNAP participants at Patapsco Mart regularly made significant grocery purchases from the store within 48 hours of receiving the deposits into their SNAP accounts. A.R. 315-16; ECF No. 12-1 at 21.  But FNS considered and rejected this argument, and found that, while "it is not uncommon for customers to have more than one transaction per day," it is uncommon "that such multiple transactions are for large dollar amounts." A.R. 1319.  In this regard, NFS observed that the multiple SNAP transactions at issue here displayed "characteristics of use inconsistent with the nature and extent of [Patapsco Mart's] stock and facilities and are therefore, indicative of trafficking." A.R. 1319-320.  The administrative record supports NFS's findings.  *See* A.R. 97-120 (documenting Patapsco Mart's stock and facilities during the Store Visit).

Plaintiffs' argument that the multiple transactions at issue are not indicative of SNAP benefits trafficking, given the demographics of Patapsco Mart's customers, is also unpersuasive.  As NFS observes in its Final Decision, "[i]f specific diverse family needs are causing these questionable transactions at [Patapsco Mart], it would be expected that similar patterns would exist at other neighboring stores.  However, that is not the case." A.R. 1320. Indeed, Plaintiffs point to no evidence to show that similar shopping patterns occurred at neighboring stores.  *See* ECF No. 20-1 at 30-31.  Plaintiffs' argument that co-shopping—when multiple members of a household are responsible for picking up groceries—explains the multiple transactions that NFS found to be suspicious, is also unavailing. A.R. 316; ECF No. 12-1 at 22.  As FNS observes in the Final Decision:

> [Plaintiffs] provided no evidence to show that co-shopping is particularly common among SNAP recipients in Brooklyn, Maryland.  If co-shopping truly impacted Patapsco Mart LLC as the Appellant suggests, it would stand to reason that co-shopping

> would affect other nearby firms as well. This would manifest itself
> in comparable firms having similar transaction patterns – multiple
> transactions from the same household in a short period of time.
> But this is simply not the case.

A.R. 1320.

Plaintiffs also do not sufficiently explain how these suspicious transactions were due to either forgotten items, or telephone orders. Plaintiffs argue that the subject transactions are explained by the normal shopping practice of returning for forgotten items. ECF No. 12-1 at 22. But, as FNS concludes in the Final Decision, the subsequent transactions by these customers are "too large to consist of forgotten items." A.R. 1321. The record evidence also makes clear that Patapsco Mart did not accept telephone orders, because the Store Visit Report confirms that the store does not take telephone or online orders. A.R. 1318.

Lastly, there is no evidence before the Court to support Plaintiffs claims that the subject suspicious transactions were caused by bored customers returning to the store, or by a lack of customer access to transportation, or to other stores. ECF No. 12-1 at 22-23. As FNS observes in the Final Decision, if shopping due to boredom were a regular occurrence at Patapsco Mart, "this pattern would manifest itself in comparable firms having similar transaction patterns. But this is simply not the case." A.R. 1322. Again, Plaintiffs point to no evidence to support their bored customer theory. *See* ECF No. 20-1.

The record evidence also makes clear that "[t]here were 33 SNAP authorized retailers located within a 2.0 mile radius [of Patapsco Mart], including 1 small grocery store, 1 supermarket and 1 super store." A.R. 1322. Given this, Plaintiffs argument that their customers were unable to shop at other stores is simply unsubstantiated.

Because the evidence before the Court supports FNS's findings regarding suspicious multiple transactions from the same household or account at Patapsco Mart, Plaintiffs have not shown that the SNAP violations based upon these transactions did not occur.

> 2. The Record Evidence Supports FNS's Finding Of
> <u>Excessively Large Purchase Transactions That Indicate Trafficking</u>

The unrebutted evidence before the Court similarly supports FNS's finding that several transactions involving excessively large purchases are evidence of SNAP benefits trafficking at Patapsco Mart.

The administrative record shows that the agency's investigation of Patapsco Mart uncovered 1,399 suspicious transactions involving excessively large purchase-transactions. A.R. 197.  These transactions totaled $76,805.99, and the largest single transaction was for the amount of $374.86.  A.R. 250.  FNS observes in the Final Decision that such "large transaction amounts are not consistent with [Patapsco Mart's] observed characteristics and food inventory."  A.R. 1322.

The record evidence also shows that these transactions are for amounts that far exceed the average transaction amounts at neighboring stores and at convenience stores located in the rest of Baltimore City.  A.R. 1325.  Notably, the average amount of the SNAP transactions at issue at Patapsco Mart is $54.90, during the relevant review period.  A.R. 1324.  By comparison, NFS found that the average transaction amount for a convenience store located in Baltimore City County was in the amount of $9.81. *Id.*  And so, this evidence shows that average transaction amount for Patapsco Mart is more than 5.5 times larger than the average purchase amount for this store type. *Id.*  Courts have routinely granted summary judgment upholding the permanent disqualification from SNAP when, as is the case here, NFS has relied on EBT data showing an unusually high number of multiple transactions from the same household and high-dollar transactions for the type of store. *See, e.g.*, *Brother Convenience Store, Inc.*, 2021 WL 3911594, at *11 (granting summary judgment in favor of the agency and holding that "the evidence of an unusually high number of high-dollar transactions occurring at the Store strongly supports a finding that such purchases were not legitimate transactions"); *Shanaa v. United States*, No. 2:15-cv-00042, 2017 WL 2838150, at *4 (E.D. Wis. June 30, 2017) (granting summary judgment in favor of the Government where there were "excessive numbers of large dollar purchases," which were "inconsistent with the store's inventory which is predominately comprised of low value food items") (internal quotation marks omitted).

Plaintiffs' argument that these excessively high-dollar amount transactions are not evidence of SNAP benefits trafficking are, again, unpersuasive.  Plaintiffs first argue that the high-dollar amount transactions do not indicate trafficking, because Patapsco Mart was sufficiently stocked in all staple food categories to support such large transactions.  ECF No. 20-1 at 1-2, 31-32.  But the record evidence shows that FNS found Patapsco Mart's food stock and facilities to be insufficient "to provide for all of one's food needs."  A.R. 1322.  Plaintiffs argument that deli sales were responsible for these high-dollar transactions is also

unsubstantiated.  As FNS explains in the Final Decision, "the EBT register receipts provided by [Plaintiffs] confirm that purchases of low dollar value foods . . . are predominant and that deli sales account for a small portion of the firm's SNAP sales."  A.R. 1323.  Again, Plaintiffs provide no evidence to rebut this finding.  *See* ECF No. 20-1.

Plaintiffs' argument that the subject transactions are not evidence of trafficking, because the Store Visit Report's list of most expensive items was incomplete and because of the demographics of the store's customers, are also unsupported.  ECF No. 20-1 at 30-32.  The record evidence shows that the Store Visit Report "was completed in collaboration with and signed by a store employee" and that this report states that Patapsco Mart's more expensive items were stocked in limited quantities.  A.R. 1323.  The EBT register receipts that Patapsco Mart provided to the agency also show that low-dollar value foods were the predominant purchases at the store.  A.R. 1323-324.  Plaintiffs fail to explain how the store's customer demographics account for these high-dollar transactions.  *See* ECF No. 20-1 at 30-34; ECF No. 12-1 at 25.

Lastly, the customer affidavits submitted by Plaintiffs do not negate the evidence of trafficking in this case.  Of the nine customer affidavits submitted by Plaintiffs, FNS found that six households overstated their large purchase amounts.  A.R. 1327.  For example, one household attested to spending as much as $180 at one time at Patapsco Mart, during the relevant time period, but according to the EBT records, the largest transaction from that household was $40.88.  *Id.*  Plaintiffs also have not substantiated their argument that the high-dollar amount transaction can be explained by customers who relied upon Patapsco Mart to be their primary grocery store.  ECF No. 20-1 at 1; A.R. 1327-328.  As FNS acknowledges in the Final Decision, it is certainly possible that some of the store's customers shopped more regularly at Patapsco Mart.  A.R. 1328.  But, the record evidence calls this theory into doubt, because FNS found that approximately 340 (or 52%) of the 652 applicable households also completed a SNAP transaction at a larger grocery store, supermarket, or super store within a 48 hour timeframe of the suspicious transactions at issue.  *Id.*

Because Plaintiffs have not met their burden to show, by a preponderance of the evidence, that the SNAP benefits trafficking found by FNS found did not occur, summary judgment in the Government's favor is warranted on this threshold issue.  *See Bon Supermarket & Deli*, 87 F. Supp. 2d. at 599;  *Idias*, 359 F.3d at 696.

C.    FNS's Decision To Permanently Disqualify Patapsco Mart
      From SNAP Was Reasonable And In Accordance With Law

Having determined that Plaintiffs fail to meet their burden to show that the alleged trafficking violations did not occur, the Court next considers whether the sanction imposed by FNS is valid. *AJS Petroleum, Inc.*, 2012 WL 683538, at *4. The unrebutted evidence in this case shows that FNS properly determined that Plaintiffs should be permanently disqualified from SNAP, given the trafficking violations found at Patapsco Mart for two reasons.

First, there can be no genuine dispute that Plaintiffs are not eligible to receive a civil monetary penalty in lieu of disqualification from SNAP, because they failed to timely request this relief. It is well-established that FNS may impose a CMP of up to $59,000, in lieu of permanent disqualification for trafficking, if certain criteria are met under Section 278.6(i) of the SNAP regulations. 7 CFR § 278.6(i). Specifically, the relevant regulation provides that:

> If a firm fails to request consideration for a civil money penalty in lieu of a permanent disqualification for trafficking and submit documentation and evidence of its eligibility within the 10 days specified in § 278.6(b)(1) [10 days of receiving the Charge Letter], the firm shall not be eligible for such a penalty.

7 CFR § 278.6(b)(2)(iii).

In this case, it is undisputed that Mr. Nasir received the Charge Letter at issue in this case on November 16, 2021. A.R. 261. And so, Plaintiffs were required to request a CMP, on or before November 26, 2021. 7 CFR § 278.6(b)(2)(iii). But, the record shows that Plaintiffs did not request a CMP until December 3, 2021, when they requested an administrative review of FNS's trafficking determination. A.R. 269-75; 328 (requesting that, if the Administrative Review Branch found trafficking did occur, that the store be sanctioned with a CMP in lieu of permanent disqualification). And so, Plaintiffs' request for a CMP is untimely.

The Government also argues with persuasion that the permanent disqualification of Patapsco Mart from SNAP was the only available sanction available to FNS. Congress has mandated that the sanction for trafficking in SNAP benefits is permanent disqualification from SNAP. 7 U.S.C. § 2021(b)(3)(B); *see also* 7 C.F.R. § 278.6(e)(1). Notably, Title 7, United States Code, section 2021(b)(3)(B) provides, in relevant part, that disqualification from SNAP is permanent upon:

> [t]he *first occasion* or any subsequent occasion of a
> disqualification based on the purchase of coupons or trafficking
> in coupons or authorization cards by a retail food store or wholesale
> food concern or a finding of the unauthorized redemption, use,
> transfer, acquisition, alteration, or possession of EBT cards . . . .

(emphasis added); *see also Idias*, 359 F.3d at 697 ("[A] store that is caught trafficking in food stamps even one time *must be* permanently disqualified from the Food Stamp Program, unless the Secretary of Agriculture determines that the store had in place an effective anti-trafficking policy.") (emphasis added); *Mahmood*, 2012 WL 3038638, at *3 ("[T]he Court agrees that the permanent disqualification of Plaintiff from participation in the SNAP program is not arbitrary or capricious and is, in fact, mandated by the statute.").

As discussed above, FNS's determination that Plaintiffs engaged in SNAP benefits trafficking is well-documented by the evidence in this case. And so, the agency appropriately determined that the permanent disqualification of Patapsco Mart from SNAP was the only sanction that it could impose in this case.

### D.     Summary Judgment Is Appropriate

As a final matter, Plaintiffs have not shown that summary judgment is unwarranted, because there are either material facts in dispute, or discovery is necessary before the Court resolves this litigation. As discussed above, the record evidence in this case is not in dispute. ECF No. 25 at 10-11. Rather, Plaintiffs challenge the conclusion that FNS reached, based upon this undisputed evidence, to determine that Plaintiffs engaged in the trafficking in SNAP benefits. ECF No. 20-1 at 3-7, 23-35.

Courts regularly grant summary judgment in favor of the Government under such circumstances. *See Loma Deli Grocery Corp.*, 2021 WL 4135216, at *8 (granting motion for summary judgment and holding that "[p]laintiffs' attack on the 'patterns' identified in the ALERT system does not give rise to a question of material fact"); *see also AJS Petroleum, Inc.*, 2012 WL 683538, at *5 (observing that "FNS does not need to provide evidence that a store was caught 'red-handed' engaging in a food stamp violation in the summary judgment stage") (quoting *Young Choi Inc. v. United States*, 639 F. Supp. 2d 1169, 1178 (D. Haw. 2009)); *Brother Convenience Store, Inc.*, 2021 WL 3911594, at *12 (rejecting plaintiffs' complaint that "USDA 'did not conduct even a basic investigation' because it failed to 'contact[ ] cardholders

of the alleged suspicious transactions'").  And so, such relief is appropriate here.

Plaintiffs also fail to show that discovery is needed before the Court resolves the Government's dispositive motion.  *See Negash*, 772 F. App'x 34, 35 (4th Cir. 2019) ("[A] court may deny a Rule 56(d) motion when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment."). While Plaintiffs seek to obtain various data, policy memoranda, standard operating procedures, store reports for other stores and background on the ALERT system, ECF No. 20-5, they fail to identify a genuine issue of material fact regarding the suspicious transactions at issue in this case that would be addressed or resolved by this information.  ECF No. 20-1 at 15-17.  Given this, Plaintiffs have not shown that they are entitled to discovery under Rule 56(d). *See AJS Petroleum, Inc.*, 2012 WL 683538, at *5 (denying plaintiff's request for discovery by explaining that "the administrative record and other evidence appended to the parties' briefs provide a sufficient factual foundation" for summary judgment, and "additional discovery would not change the factual landscape in this case").

## V.     CONCLUSION

In sum, a careful reading of the complaint shows that Plaintiffs have sufficiently alleged their claim challenging FNS's Final Decision under the Food and Nutrition Act.  But, the unrebutted evidence in this case makes clear that FNS's determination that Plaintiffs engaged in the trafficking of SNAP benefits is supported by the record evidence.  The record evidence also makes clear that FNS's decisions to permanently disqualify Patapsco Mart from SNAP was reasonable and in accordance with applicable law.  And so, for the foregoing reasons, the Court:

1.     **GRANTS-in-PART** the Government's motion to dismiss or, alternatively, for summary judgment; and

2.     **DISMISSES** the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**


s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge